# 14-2807-cv

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆◆

OPTIMAL INVESTMENT SERVICES, S.A., HUNTON & WILLIAMS LLP,

*Movants-Appellants,*

—against—

IN RE APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. 1782
TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS,

*Appellee.*

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

## BRIEF AND SPECIAL APPENDIX
## FOR MOVANTS-APPELLANTS

---

SHAWN PATRICK REGAN
HUNTON & WILLIAMS LLP
200 Park Avenue, 52nd Floor
New York, New York 10166
(212) 309-1000

SAMUEL A. DANON
THOMAS R. JULIN
GUSTAVO J. MEMBIELA
PAULO R. LIMA
HUNTON & WILLIAMS LLP
1111 Brickell Avenue, Suite 2500
Miami, Florida 33131
(305) 810-2500

*Attorneys for Movants-Appellants*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, the undersigned counsel for Movants-Appellants, Optimal Investment Services, S.A., and Hunton & Williams LLP herby certify as follows:

1.    Optimal Investment Services, S.A. is ultimately a wholly-owned subsidiary of Banco Santander, S.A.  It is not otherwise affiliated with any other publicly-traded company, and no other publicly-traded company owns ten percent or more of its stock.

2.    Banco Santander, S.A. is a publicly-traded company.  Banco Santander, S.A. has no parent company and no publicly-traded company owns ten percent or more of its stock.

Dated:  September 4, 2014                    HUNTON & WILLIAMS LLP

                                             /s/      Shawn Patrick Regan
                                             SHAWN PATRICK REGAN

                                             *Attorneys for Movants-Appellants*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................1

JURISDICTIONAL STATEMENT .........................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ......................................2

STATEMENT OF THE CASE ................................................................3

STATEMENT OF THE FACTS ...............................................................4

    The Parties.............................................................................4

    The *Rembaum* Action and Jaitly Examination ...................................5

    The § 1782 Proceeding ..............................................................7

    The District Court's Order...........................................................9

SUMMARY OF THE ARGUMENT ......................................................9

STANDARD OF REVIEW ..................................................................10

ARGUMENT..................................................................................11

I.    Berlamont Is Not Seeking Discovery for Use
     "In a Proceeding in a Foreign or International Tribunal." ........................11

II.   The District Court Should Have Denied the Application ..........................14

    A.   The Hague Convention and International
        Comity Require Reversal of the District Court. ..............................15

        1.   The Letter Rogatory and the Order for Examination
             Bar Disclosure of the Jaitly Documents to Berlamont. ............15

        2.   The District Court's Willingness to
             Ignore the Letter Rogatory and Order for
             Examination Violates Principles of Comity. ...........................18

    B.   Swiss Attorney-Client Privilege
        Bars Disclosure of the Jaitly Documents. .......................................22

C.   A Protective Order Should Have Been Imposed. ............................26

CONCLUSION ..................................................................................................31

HUNTON & WILLIAMS LLP

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Astra Aktiebolag v. Andrx Pharmaceuticals, Inc.*,
  208 F.R.D. 92 (S.D.N.Y. 2002).................................................................23, 26

*Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*,
  171 F.R.D. 135 (S.D.N.Y. 1997)......................................................................28

*Cuba R.R. Co. v. Crosby*,
  222 U.S. 273 (1912).........................................................................................14

*Dove v. Atlantic Capital Corp.*,
  963 F.2d 15 (2d Cir. 1992)...............................................................................27

*Esso Standard Oil, S.A., v. S.S. Gasbras Sul*,
  387 F.2d 573 (2d Cir. 1967).............................................................................14

*Feliciano v. Reliant Tooling Co., Ltd.*,
  691 F.2d 653 (3d Cir. 1982)........................................................................ 21-22

*First American Corp. v. Price Waterhouse LLP*,
  154 F.3d 16 (2d Cir. 1998)...............................................................................21

*Four Pillars Enterprises Co., Ltd. v. Avery Dennison Corp.*,
  308 F.3d 1075 (9th Cir. 2002)..........................................................................30

*Golden Trade v. Lee Apparel Co.*,
  143 F.R.D. 514 (S.D.N.Y. 1992)......................................................................23

*In re Application of Aldunate*,
  3 F.3d 54 (2d Cir. 1993)....................................................................................1

*In re Application of Procter & Gamble Co.*,
  334 F. Supp. 2d 1112 (E.D. Wis. 2004) ..........................................................31

*In re Bayer AG*,
  146 F.3d 188 (3d Cir. 1998).............................................................................30

*In re Edelman*,
  295 F.3d 171 (2d Cir. 2002).............................................................................11

iv

HUNTON & WILLIAMS LLP

*In re Letters Rogatory Issued by the Dir. of Inspection of India*,
  385 F.2d 1017 (2d Cir. 1967) .......................................................... 1-2

*In re Magnetic Audiotape Antitrust Litig.*,
  334 F.3d 204 (2d Cir. 2003) ..............................................................14

*Intel v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004) ................................................................. passim

*Martindell v. Int'l Tel. & Tel. Corp.*,
  594 F.2d 291 (2d Cir. 1979) ..............................................................29

*Metso Minerals Inc. v. Powerscreen Int'l Distribution Ltd.*,
  2007 WL 1875560 (E.D.N.Y. June 25, 2007) ...................................17

*Padgett v. Loventhal*,
  706 F.3d 1205 (9th Cir. 2013) ...........................................................27

*Production & Maint. Employees' Local 504, Laborers Int'l Union v.
  Roadmaster Corp.*,
  954 F.2d 1397 (7th Cir. 1992) ...........................................................27

*Republic of Ecuador v. Connor*,
  708 F.3d 651 (5th Cir. 2013) .............................................................22

*Schiller v. City of New York*,
  2007 WL 136149 (S.D.N.Y. Jan. 19, 2007) .......................................29

*Singleton v. Wulff*,
  428 U.S. 106 (1976) ...........................................................................25

*Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of
  Iowa*,
  482 U.S. 522 (1987) ...........................................................................20

## STATUTES AND RULES

28 U.S.C. § 1291 ...................................................................................1

28 U.S.C. § 1331 ...................................................................................1

28 U.S.C. § 1782 .......................................................................... passim

Fed. R. Civ. P. 26(c) ...................................................................... 28-29

HUNTON & WILLIAMS LLP

Fed. R. Civ. P. 44.1....................................................................................13, 14, 26

**OTHER AUTHORITIES**

Convention on the Taking of Evidence Abroad in Civil or Commercial
Matters, Art. 1 ("Hague Convention"),
23 U.S.T. 2555, 847 U.N.S.T. 231 ....................................................................17

English Civil Procedure Rules 1998, Rule 32.12.................................................18

Swiss Federal Act on the Freedom of Movement of Lawyers, Art. 13 .................25

Swiss Federal Code of Civil Procedure, Art. 160.................................................25

Swiss Federal Code of Criminal Procedure, Art. 264, §1 .....................................25

Swiss Penal Code, Art. 321, §1, para. 1 ...............................................................25

9A Charles Alan Wright & Arthur R. Miller, § 2447 (3d ed. 2008) ......................14

HUNTON & WILLIAMS LLP

## PRELIMINARY STATEMENT

Movants-Appellants Optimal Investment Services, S.A. ("OIS") and Hunton & Williams LLP ("Hunton") (collectively, "Appellants") respectfully appeal the denial of their Joint Motion To Vacate *Ex Parte* Order and Quash *Ex Parte* Subpoena, or for a Protective Order, by the United States District Court for the Southern District of New York, Judge Jed S. Rakoff, in *In re Application of Franck Berlamont for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings*, No. 14 Misc. 00190-JSR on August 4, 2014 (the "Order").

## JURISDICTIONAL STATEMENT

This action arises under 28 U.S.C. § 1782(a). Jurisdiction was conferred upon the District Court by 28 U.S.C. §§ 1331, 1782(a). Appellants appeal to this Court from a Memorandum Order dated August 4, 2014. (Special Appendix at 1-5.)[1] Appellants timely filed their Notice of Appeal on August 5, 2014. (Joint Appendix at 330 – 332.)[2] Jurisdiction is conferred upon this Court by 28 U.S.C. § 1291; *see also In re Application of Aldunate*, 3 F.3d 54, 57 (2d Cir. 1993) ("[D]enial of motion to vacate discovery order and to quash subpoena issued pursuant to 28 U.S.C. § 1782 constitutes final, appealable decision.") (citing *In re*

---

[1]    References to the Special Appendix are abbreviated as "SPA-__."

[2]    References to the Joint Appendix are abbreviated as "A-__."

*Letters Rogatory Issued by the Dir. of Inspection of India*, 385 F.2d 1017, 1018 (2d Cir. 1967)).

STATEMENT OF ISSUES PRESENTED FOR REVIEW

This appeal presents four issues for review:

1.   Does Section 1782, which provides a vehicle for obtaining discovery in the United States for use "in a proceeding in a foreign or international tribunal," permit a foreign person to compel such discovery for the stated purpose of providing it to a foreign prosecutor's "inquiry" when the applicant fails to show that the foreign prosecutor can adjudicate the complaint or that the complainant has procedural rights in connection with the prosecutor's disposition of the complaint akin to the rights of a litigant in a judicial proceeding?

2.   Did the District Court properly account for principles of comity when concluding that the Letter Rogatory and the English High Court's Order for Examination do not constrain production of the Jaitly Documents for use in a Swiss criminal inquiry?

3.   Did the District Court err when it concluded that Swiss privilege law does not apply to the Jaitly Documents and failed to address the Appellants' substantive arguments that Swiss privilege law bars disclosure under Section 1782?

2

4.     Did the District Court err when it denied the Appellants' request for a protective order?

STATEMENT OF THE CASE

Franck Berlamont ("Berlamont") commenced an action in the Southern District of New York on June 18, 2014, by making an *ex parte* application for an order pursuant to 28 U.S.C. § 1782 to conduct discovery in a foreign proceeding. (A-9 – A-14.)  The application identified the "proceeding" merely as "*Procédure Pénale n° P/4010/2009 Frank Berlamont c/Manuel Echeverría* ." (A-9.)  It did not identify any court or other adjudicative body before which a "proceeding" was pending or would be pending.  It did not attach any documents reflecting that any adjudicative proceeding either had commenced or would be commenced in the immediate future.   Instead, the application merely asserted that "Petitioner presented a criminal complaint in June 2009, to Geneva's public prosecutor who opened a criminal probe." (A-9.)  In essence, Berlamont alleged that, in 2009, he had gone to a local law enforcement officer in the city of Geneva and made an allegation that he had been a victim of a crime, after which that local law enforcement officer opened a file concerning OIS's former CEO Manuel Echeverría.

Judge Paul Gardephe, sitting as the Part I Judge, granted Berlamont's application on an *ex parte* basis on June 20, 2014, through an order authorizing

3

Berlamont to serve a subpoena compelling Hunton to produce the transcript and exhibits from a confidential oral examination of Rajiv Jaitly ("Jaitly"), OIS's former Chief Risk Officer (A-192) who was examined in July 2012 in the United Kingdom pursuant to a letter rogatory (the "Letter Rogatory"). (A-209 – A-220.)[3]

OIS intervened in the proceeding below, after which OIS and Hunton jointly moved to vacate the *ex parte* order and quash the *ex parte* subpoena, or for a protective order. (A-203 – A-205.)[4] On August 4, 2014, Judge Rakoff, sitting as the Part I Judge, denied OIS and Hunton's joint motion. (SPA-1 – SPA-5.) This appeal followed.

## STATEMENT OF THE FACTS

### The Parties

OIS is an investment management company incorporated in Switzerland and an indirect wholly-owned subsidiary of Banco Santander S.A., a Spanish bank. (A-41.) OIS was the investment manager for a family of foreign alternative investment funds, including the Optimal Strategic U.S. Equity Fund ("Optimal SUS"). (A-9 – A-10.) This fund was among the many victims of the Bernard Madoff Ponzi scheme. (*Id.*)

---

[3] The Letter Rogatory had been issued in a previous case, *In re Optimal U.S. Litig.*, No. 10-cv-4095-SAS (S.D.N.Y.) ("*Rembaum*"), where Hunton had served as counsel for OIS and other defendants.

[4] The District Court granted from the bench OIS's motion to intervene. (A-251.)

Hunton represented OIS in several lawsuits in which certain foreign investors endeavored to sue for losses incurred from the Madoff Ponzi scheme. Those suits included the *Rembaum* action in the Southern District of New York. (A-156 – A-159.)

Franck Berlamont is the "founding partner, President and CEO of Geneva Partners," a Swiss-based investment management firm. (A-144.) Berlamont alleges that he invested his own funds, as well as those of his clients, in Optimal SUS. (A-144.) Following discovery of the Madoff fraud, Berlamont alleges that he presented a criminal complaint to Geneva's public prosecutor in June 2009 accusing OIS and its former CEO, Echeverría, of making various misrepresentations concerning their alleged knowledge of Madoff's trading activities as it related to Optimal SUS. (A-144.) In August 2009, Echeverría "was charged with disloyal management with the aim of self-enrichment on the basis of a legal act." (A-145.) On this basis, Berlamont claims to be the "complainant" in some sort of a proceeding being conducted by a public prosecutor in Geneva, Switzerland. (A-144 – A-145.)

The <em>Rembaum</em> Action and Jaitly Examination

The *Rembaum* action was filed in the Southern District of New York on May 18, 2010, by 48 foreign individuals and entities asserting federal securities claims, as well as state common law tort and contract claims. The *Rembaum* plaintiffs

5

filed their Fourth Amended Complaint on June 21, 2011, naming Banco Santander S.A., Banco Santander International, OIS, and Jonathan Clark (an OIS employee) as defendants.

On May 3, 2012, the *Rembaum* Court issued a Letter Rogatory to the English High Court of Justice requesting that it permit the oral examination of Rajiv Jaitly, OIS's former Chief Risk Officer.  (A-209 – A-220.)  The Letter Rogatory described in detail the provisions of the operative Confidentiality Order governing discovery being taken in *Rembaum* and conspicuously represented that "all confidential information shall be used only for purposes of this action."  (A-218; A-227 – A-239.)

The English High Court of Justice responded to the Letter Rogatory by issuing an Amended Order for Examination, dated June 14, 2012 ("Order for Examination").  (A-221 – A-226.)  The Order for Examination provides that "the purpose of questioning in the Examination shall be for the purpose only of eliciting and recording testimony appropriate to be given at the trial in the New York District Court for the Southern District of New York." (A-224.)

 On July 16, 2012, Jaitly was examined in London pursuant to the laws and procedures of the United Kingdom and the terms of the Letter Rogatory and Order for Examination.  (A-223.)  The transcript of the Jaitly examination and its exhibits (collectively, the "Jaitly Documents") were designated confidential pursuant to the

6

*Rembaum* Confidentiality Order.  (A-227 – A-239; A-258.)

On August 10, 2012, District Judge Shira A. Scheindlin dismissed the *Rembaum* action on grounds of *forum non conveniens*, concluding that Switzerland was the proper forum for the litigation.  (A-117 – A-142.)  Judge Scheindlin denied the *Rembaum* plaintiffs' motion for reconsideration on October 10, 2012.  The plaintiffs appealed to this Court, but later withdrew their appeal and have not re-filed in Switzerland.  *See Abraham and Mina Rembaum v. Banco Santander, S.A.*, No. 12-4527 (2d Cir.), at Dkt. 70.

## The § 1782 Proceeding

In his *ex parte* application commencing this action, Berlamont stated he "must obtain the transcript and exhibits from Mr. Jaitly's prior testimony as soon as possible so that the Swiss prosecutor may use it to prepare for Mr. Jaitly's [planned] July 22, 2014 Swiss deposition."  (A-12.)  Berlamont did not identify any adjudicative proceeding that either had been commenced or that would be commenced.

Berlamont asserted that he expected the investigation of his criminal complaint would conclude in August 2014.  (A-145.)  The District Court granted Berlamont's *ex parte* application on June 20, 2014.  (A-192.)  OIS and Hunton moved on June 30, 2014 to vacate the *ex parte* order, quash the subpoena or, in the alternative, for a protective order to ensure the continued confidentiality of the

Jaitly Documents if they were ordered produced to Berlamont. (A-203 – A-205.) The District Court heard argument on the joint motion to vacate on July 11, 2014 (A-250 – A-303.) Following oral argument, Berlamont's counsel supplemented his opposition to the motion to vacate by filing a letter dated July 15, 2014, from Marc Tappolet, the Swiss Prosecutor investigating Berlamont's complaint with respect to Echeverría. (A-323.) According to the translation Berlamont submitted, Tappolet's letter states the Jaitly Documents would be "of great usefulness for my inquiry." (A-323.) The District Court denied OIS and Hunton's motion on August 4, 2014. (SPA-1 – SPA-5.)

Throughout the Section 1782 proceedings, the alleged "deadlines" cited by Berlamont to justify his need for obtaining Jaitly's examination transcript and exhibits have proven quite fluid. Indeed, during the July 11, 2014, argument on the joint motion to vacate, Berlamont's counsel disclosed that the Jaitly's deposition (purportedly set for July 22, 2014) had been "adjourned" and that "a new date hasn't been set yet." (A-263 – A-264.) Berlamont's counsel also later revealed in a declaration filed on August 19, 2014, that the "close of the evidentiary phase of the Swiss Proceeding has been extended from September 23, 2014 until October 7, 2014." (A-336.) To the best of the Appellants' knowledge, Jaitly's deposition still has not been rescheduled. And there is no evidentiary basis in this proceeding to conclude that Jaitly, a U.K. resident who previously refused

8

to leave the U.K. to be examined pursuant to the Letter Rogatory issued in *Rembaum*, will be examined in Switzerland by the prosecutor investigating Berlamont's complaint.

### The District Court's Order

The District Court denied the Appellants' motion to vacate, concluding: (1) Berlamont satisfied Section 1782's "for use in a proceeding in a foreign or international tribunal" requirement based on the Swiss Prosecutor's letter stating that the Jaitly Documents would be "of great usefulness to my inquiry"; (2) the discretionary factors enunciated in *Intel v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), weighed in favor of allowing the requested discovery; (3) neither the *Rembaum* Confidentiality Order, the Letter Rogatory, nor the Order for Examination constrains disclosure of the Jaitly Documents; (4) Swiss privilege law does not apply to constrain disclosure; and (5) neither the Hague Convention, nor principles of international comity constrain disclosure of the Jaitly Documents. (SPA-1 – SPA-5.)

### SUMMARY OF THE ARGUMENT

The District Court's denial of the Appellants' motion to vacate was improper for four reasons.

*First*, Berlamont did not meet the statutory requirement of establishing that the evidence sought will be used in a "proceeding in a foreign or international

tribunal." He did not show that the Swiss prosecutor to whom he intends to provide the Jaitly Documents possesses adjudicative powers as required by Supreme Court precedent interpreting Section 1782.

*Second*, the Letter Rogatory and the Order for Examination, by their very terms, constrain disclosure of the Jaitly Documents to Berlamont. To the extent those documents are not binding, the District Court violated principles of comity by refusing to afford those documents adequate weight in its analysis of Berlamont's application.

*Third*, the District Court erred when it concluded that Swiss privilege law does not apply to the Jaitly Documents because the documents do not "touch base" with Switzerland. This Court should exercise its discretion to consider the substantive question and conclude that Swiss privilege law bars disclosure to Berlamont.

*Fourth*, in the event that this Court affirms the District Court and compels production of the Jaitly Documents, those documents should be produced subject to a suitable protective order. Continued confidential treatment is consistent with applicable case law, as well as the *Rembaum* Confidentiality Order, the Letter Rogatory, and the Order for Examination.

## STANDARD OF REVIEW

Two distinct standards govern this Court's review of the District Court's

10

order: "first, we construe *de novo*, the language of the statute; and, then, if necessary, we decide whether the district court abused its discretion in deciding the case." *In re Edelman*, 295 F.3d 171, 175 (2d Cir. 2002). Thus, the Court reviews *de novo* the question of whether Berlamont has met the statutory requirements under 28 U.S.C. § 1782, while the District Court's discretionary determination whether to allow Berlamont to obtain the requested discovery, if those statutory requirements are met, is reviewable for abuse of discretion.

## ARGUMENT

### I.

### Berlamont Is Not Seeking Discovery for Use "In a Proceeding in a Foreign or International Tribunal."

The United States Supreme Court addressed the parameters of Section 1782 in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). In that case, Advanced Micro Devices ("AMD") had filed a complaint with a tribunal denominated as the Directorate-General for Competition of the Commission of the European Communities ("European Commission") asserting that Intel had engaged in various anti-competitive practices. AMD then applied to a U.S. district court, pursuant to Section 1782, for an order requiring Intel to produce potentially relevant documents that it had produced in a previous U.S. litigation with another competitor.

11

In deciding whether AMD's application fell within the scope of Section 1782, the Supreme Court squarely addressed whether AMD had sought the discovery "for use in a proceeding in a foreign or international tribunal." *Intel*, 542 U.S. at 257.  In holding that the European Commission constituted a "tribunal", the Court distinguished the Commission from a simple local law enforcement agency on the ground that the Commission possessed adjudicative powers associated with tribunals.  *Id.* at 255 and n.9.  Specifically, the Court emphasized that the Commission does not merely investigate complaints, as a law enforcement agency would, but also, much like a trial court, renders a final written decision subject to judicial review.  *Id.* at 254-55.  The Court quoted with approval the Ninth Circuit's observation that: "'[The European Commission is] a body authorized to enforce the EC Treaty with written, binding decisions, enforceable through fines and penalties. [The Commission's] decisions are appealable to the Court of First Instance and then to the [European] Court of Justice.'"  *Id.* at 252.

Notably with respect to this appeal, a dissent by Justice Breyer expressed concern that the majority had read Section 1782 too broadly, establishing a rule whereby  a "foreign private citizen could ask an American court to help the citizen obtain information, even if the foreign prosecutor were indifferent or unreceptive." *Id.* at 267 (Breyer, J., dissenting).  The dissent warned of a risk that mere complainants would use discovery to bludgeon opponents into improper

12

settlements and that untethering Section 1782 from the "proceeding in a …

tribunal" requirement would open floodgates in a fashion unintended by Congress

that would "also use up domestic judicial resources and crowd our dockets." *Id.* at

268-69.

With pointed relevance for this appeal, the majority opinion endeavored to

address these concerns, explaining:

> The dissent suggests that the Commission "more closely resembles a
> prosecuting authority, say, the Department of Justice's Antitrust
> Division, than an administrative agency that adjudicates cases, say,
> the Federal Trade Commission." … That is a questionable suggestion
> in view of the European Commission's authority to determine liability
> and impose penalties, dispositions that will remain final unless
> overturned by the European courts.

Thus, the majority opinion makes clear that *Intel* does not expand Section

1782 to cover a foreign law enforcement investigation or inquiry; rather, the *sine*

*qua non* is whether the entity possesses adjudicative powers making it the

equivalent of a "tribunal," as referenced in the statute, and not a mere law

enforcement agency.

In the proceeding below, Berlamont failed to satisfy his burden of

establishing the elements of Section 1782, including that the Swiss prosecutor with

whom he lodged his complaint has the sort of adjudicatory powers required by the

statute as construed by the Supreme Court in *Intel*.

Federal Rule of Civil Procedure 44.1 provides:

13

> A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing. In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law.

Furthermore, "authoritative doctrine has been that the party who has the affirmative burden of proof on an issue of foreign law loses if he fails to prove that law." 9A Charles Alan Wright & Arthur R. Miller, § 2447 at 366 (3d ed. 2008). *See also Cuba R.R. Co. v. Crosby*, 222 U.S. 273 (1912); *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204 (2d Cir. 2003); *Esso Standard Oil, S.A., v. S.S. Gasbras Sul*, 387 F.2d 573 (2d Cir. 1967). In the latter two cases, the Second Circuit held that the failure to prove the foreign law in the district court violated the reasonable notice requirement of Rule 44.1 and barred the party from raising the matter in the appellate court. Berlamont failed to show that he is entitled to invoke Section 1782 and, therefore, the District Court's Order should be reversed.

## II.

### The District Court Should Have Denied the Application

Even assuming arguendo that Berlamont met the statutory requirements for availing himself of Section 1782, this Court should reverse the decision on the merits for three independent reasons.

14

A.    The Hague Convention and International
      Comity Require Reversal of the District Court.

The District Court's summary rejection of the Appellants' arguments that the Letter Rogatory and English High Court's Order for Examination bar disclosure of the Jaitly Documents runs afoul of the Hague Convention and ignores principles of international comity.

1.    The Letter Rogatory and the Order for Examination
      Bar Disclosure of the Jaitly Documents to Berlamont.

In the Letter Rogatory to the English High Court of Justice, the *Rembaum* Court represented that, if the High Court allowed the Jaitly examination to proceed, it would be governed by the confidentiality protections already in place in the *Rembaum* action.  In fact, the Letter Rogatory describes in detail the provisions of the *Rembaum* Confidentiality Order, containing an entire heading on the topic.  Notably, the Letter Rogatory states:

> The [Confidentiality] Order states that all confidential information *shall be used only for purposes of this action*, governs the process by which the parties may designate documents and other information as "confidential," defines "qualified persons" who may access confidential information, requires that such qualified persons sign a confidentiality agreement attached to the Order, and sets forth the procedures for modifying or objecting to any designations of confidentiality.

(A-218 (emphasis added).)  The Letter Rogatory further requested that "the confidentiality of any evidence produced be maintained pursuant to the laws of England."  (A-219.)

15

HUNTON & WILLIAMS LLP

The High Court of Justice granted the request in reliance on the representations made in the Letter Rogatory.  (A-223 (stating in introductory clause, "And Upon Reading the Letter of Request dated 3 May 2012 from the New York District Court for the Southern District of New York…").)  The Order for Examination expressly permitted the Jaitly examination for the limited use represented in the Letter Rogatory:  "[T]he purpose of questioning in the Examination shall be for the purpose only of eliciting and recording testimony appropriate to be given *at the trial in the New York District Court for the Southern District of New York*."  (A-224 at ¶ 6(h) (emphasis added).)  Finally, the Order for Examination also provided that the examination "shall be conducted in accordance with the [English] Civil Procedure Rules 1998 (the "CPR")."  (A-224 at ¶ 4.)

The District Court failed to properly account for these circumstances.  Although the District Court opined that the "High Court's Order includes no express condition that Jaitly's examination only be used in *Rembaum*" (SPA-5), Paragraph 6(h) of the High Court's Order for Examination does precisely that.  (*See* A-224 (limiting the examination to "testimony appropriate to be given at the trial in the New York District Court for the Southern District of New York").)

This conclusion is further supported when the Order for Examination is considered in light of the Hague Convention and the English government's express policy implementing the Convention.  Article 1 of the Hague Convention provides

16

that:  "A letter shall not be used to obtain evidence which is not intended for use in judicial proceedings, commenced or contemplated."[5]  Thus, there is no basis to conclude the English High Court would have granted the Letter Rogatory for use in the way that Berlamont now requests — *i.e.*, by a stranger to the Letter Rogatory (Berlamont) who seeks to use the information two years later in a Swiss criminal inquiry with which the High Court was unfamiliar at the time it accepted the Letter Rogatory.

Furthermore, the United Kingdom has made an Article 23 Reservation under the Hague Convention, whereby the British government took the position that "the United Kingdom will not execute Letters of Request issued for the purpose of obtaining pre-trial discovery of documents."  *See Metso Minerals Inc. v. Powerscreen Int'l Distribution Ltd.*, 2007 WL 1875560, *2 (E.D.N.Y. June 25, 2007).  The Article 23 Reservation does not affect requests to take testimony for use at trial, as evidenced by the fact that the High Court granted the Letter Rogatory allowing Jaitly's oral examination "to be given at trial in the New York District Court." (A-224.)  It informs Appellants' argument, however, that the High Court would not allow — indeed, *could not* allow — the transcript and exhibits of

---

[5] *See* Convention on the Taking of Evidence Abroad in Civil or Commercial Matters at Art. 1, *opened for signature* Mar. 18, 1970, 23 U.S.T. 2555, 847 U.N.S.T. 231, *available at* http://www.hcch.net/upload/conventions/txt20en.pdf (hereinafter, the "Hague Convention").

17

that examination (*i.e.*, documents) to be produced for use in "pre-trial discovery" in a separate proceeding in Switzerland.

Finally, the High Court's instruction that the Jaitly examination be conducted "in accordance with the Civil Procedure Rules 1998" provides yet another ground for prohibiting disclosure of the Jaitly Documents. Jaitly's examination is subject to Civil Procedure Rule 32.12, which provides that "a witness statement may be used only for the purpose of the proceedings in which it is served." CPR 32.12(1).[6] While Rule 32.12 does not apply under certain enumerated conditions, none are applicable here. *See* CPR Rule 32.12(2)(a)-(c) (exceptions where "the witness gives consent in writing to some other use of it"; "the court gives permission for some other use"; or "the witness statement has been put in evidence at a hearing held in public"). Because CPR Rule 32.12 limits their use and the High Court of Justice has not permitted any use beyond those limits, the District Court erred in releasing the Jaitly Documents to Berlamont.

> 2. The District Court's Willingness to
> Ignore the Letter Rogatory and Order for
> Examination Violates Principles of Comity.

The District Court's treatment of the Letter Rogatory and Order for Examination is based on a troubling and incorrect interpretation. The District

---

[6] A*vailable at* http://www.justice.gov.uk/courts/procedure-rules/civil/rules/part32.

HUNTON & WILLIAMS LLP

Court afforded no weight to the Letter Rogatory, dismissively labeling as "nothing but a request for judicial assistance." (SPA-4.)  The District Court also rejected the Appellants' arguments based on the Hague Convention, noting simply that "Article 1 does not impose any restrictions on the *subsequent* use of evidence obtained pursuant to properly issued Letters Rogatory."  (SPA-5 (emphasis added).)  The District Court's harshly technical approach neglects comity, a foundational principle of international discovery.  It establishes as a rule that it is appropriate for a U.S. court to request assistance from a foreign sister court based on a representation that the evidence sought will be used only for one purpose, then allow the evidence to be used for a different purpose, even a subsequent purpose that the foreign court's government has expressly rejected.

The Letter Rogatory represented to the English High Court that: (i) "all confidential information shall be used only for purpose of this action" (A-218);  (ii) the evidence "is to be used at trial in this matter" (A-211); and (iii) the evidence is "to be used in a civil proceeding before this Court" (A-210).   The District Court's Order in this subsequent proceeding ignores all of these representations and would compel the Appellants to produce the Jaitly Documents so that Berlamont can provide them to a Swiss prosecutor to help him prepare for a deposition in a Swiss criminal proceeding.

19

HUNTON & WILLIAMS LLP

This sort of bait-and-switch is inconsistent with the cooperative spirit underlying Section 1782. *See Intel*, 542 U.S. at 252 (noting the statute's "twin aims of providing efficient assistance to participants in international litigation and encouraging foreign countries *by example* to provide similar assistance to our courts") (emphasis added). This Court would be establishing a troubling precedent if it were to allow U.S. District Courts to make representations to foreign courts in letters rogatory then ignore and flout those representations once the foreign courts had granted the requested assistance. Such a policy creates two problems. First, by rendering the content of letters rogatory issued by U.S. courts meaningless (or, at best, advisory), it would undermine the faith that foreign courts place in those documents, jeopardizing U.S. litigants' ability to obtain discovery abroad from wary foreign courts. Second, foreign courts would have little incentive to abide by their own representations made in letters rogatory issued to U.S. courts, thus undermining U.S. courts' ability to protect persons within the United States from being subjected to foreign procedures that may be repugnant to U.S. policy.

These are serious consequences when one considers the prominent role that letters rogatory play in international discovery. *See Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 532 (1987) (noting one of the Hague Convention's stated purposes was to make "the employment of letters of request a principal means of obtaining evidence abroad")

HUNTON & WILLIAMS LLP

(internal quotation marks omitted).  Thus, a letter rogatory must be viewed as more than just a mere "request" that can be casually disregarded whenever convenient.  U.S. courts speak to foreign courts through letters rogatory, communicating the ground rules that the U.S. court is promising to apply if the foreign court agrees to permit the requested discovery.  And there can be no doubt that foreign courts rely on the representations of the U.S. court in deciding whether to grant the requested discovery.  *See, e.g.*, *First American Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 22 (2d Cir. 1998) ("The letter of request sought the testimony and documents of [the defendant].  The English court refused to enforce the letter of request, because [the plaintiff] was seeking pretrial discovery not provided for under the Hague Convention or British law. . . .").

To be sure, the District Court is correct that letters rogatory are not *binding*.  But nor can a court ignore the role of comity, which counsels strongly against such cynical treatment of the Letter Rogatory.  The Third Circuit has noted the central role that comity plays for both U.S. and foreign courts considering letters rogatory.  In *Feliciano v. Reliant Tooling Co., Ltd.*, the court discussed an English decision regarding letters rogatory issued under the Hague Convention as follows:

> Lord Denning, in giving effect to letters rogatory … applied the principle of comity:  "It is our duty and our pleasure to do all we can to assist that court, just as we would expect the United States court to assist us in like circumstances."

21

691 F.2d 653, 658 (3d Cir. 1982).  Courts also have recognized the centrality of comity in applying Section 1782.  *See Republic of Ecuador v. Connor*, 708 F.3d 651, 654 (5th Cir. 2013) (noting Section 1782's purpose is "[t]o promote international dispute resolution and comity").

In this case, a U.S. District Court stated one thing in the Letter Rogatory, only to have another judge of that same Court reverse course after the English High Court rendered the requested assistance.  This alone is enough to offend principles of comity.  Worse, the Order below allows Berlamont to use the requested documents for a purpose that the United Kingdom has expressly rejected by virtue of its treatment of the Hague Convention.  *See* § II(A)(1) *supra*.  The District Court abused its discretion when it ignored principles of comity and refused to afford sufficient weight to the Letter Rogatory and the English High Court's Order for Examination.  As such, the District Court's Order should be reversed.

B.    Swiss Attorney-Client Privilege
      Bars Disclosure of the Jaitly Documents.

The District Court also erred in rejecting the Appellants' argument that the Swiss attorney-client privilege bars disclosure of the Jaitly Documents.  The District Court devoted just three sentences to this argument and focused on the wrong facts in reaching the conclusion that "Swiss privilege law does not even apply here because the Jaitly documents…fail to 'touch base' with Switzerland."

22

HUNTON & WILLIAMS LLP

(SPA-4.)  The District Court did not address the substance of Appellants' argument why Swiss privilege law bars disclosure.  As an initial matter, Section 1782 expressly provides that "[a] person may not be compelled to give his testimony or statement or to produce a document or thing in violation of any legally applicable privilege."  28 U.S.C. § 1782(a).  Here, Switzerland's broad attorney-client privilege prohibits disclosure of the Jaitly Documents.

In determining which country's privilege law to apply, courts in this Circuit "defer[] to the law of the country that has the predominant or the most direct and compelling interest in whether those communications should remain confidential, unless that foreign law is contrary to the public policy of this forum."  *Astra Aktiebolag v. Andrx Pharmaceuticals, Inc.*, 208 F.R.D. 92, 98 (S.D.N.Y. 2002) (internal quotations omitted).  Moreover, "the jurisdiction with the predominant interest is either the place where the privileged relationship was entered into or the place in which that relationship was centered at the time the communication was sent."  *Id.*  Notably, "sensitivity to the interests of other jurisdictions is perhaps most compelling in the international arena."  *Golden Trade v. Lee Apparel Co.*, 143 F.R.D. 514, 521 (S.D.N.Y. 1992).

The Order dismissed the Appellants' Swiss privilege argument by concluding that Swiss law does not apply to the Jaitly Documents because they: (1) are "located" in New York, (2) were "created and produced in the context of a

23

case pending in New York," and (3) are "being sought from United States lawyers in a court in New York pursuant to a United States statute." (SPA-4 – SPA-5.)

The District Court failed to give proper consideration to the correct factors. Here, Berlamont (a Swiss resident) has requested information belonging to Hunton's Swiss client, OIS, for use by a prosecutor in a Swiss criminal inquiry of Swiss resident Echeverría. The subject matter of Jaitly's examination was expressly limited to matters arising out of his role as Chief Risk Officer for OIS. (A-226.)

The District Court's focus on New York is misplaced. While the examination was performed in connection with the *Rembaum* action, New York's interest in the Jaitly Documents is diminished by the fact that the case was dismissed on the grounds of forum *non conveniens* in part because "the fora's relative interests. . . weigh in favor of Switzerland." (A-138.) Indeed, when comparing the interests of the United States and Switzerland, Judge Scheindlin highlighted that "a Swiss prosecutor has brought a criminal action against Echeverría." (A-138.)

Nor is it of any consequence that Berlamont seeks the Jaitly documents from Hunton in New York. The fact that the Jaitly Documents are "being sought from United States attorneys in a court in New York pursuant to a United States statute" (SPA-5) does not affect the analysis, for those facts are *inherent* in every Section

24

1782 application.  *See* 28 U.S.C. § 1782(a).

Because the District Court erred in concluding that Swiss privilege law does not apply, this Court should reverse that finding.  While the District Court did not reach the substantive question of whether the Jaitly documents are privileged under Swiss law, this Court should exercise its discretion to consider that issue, as it was fully briefed below, as well as here on appeal.  *See Singleton v. Wulff*, 428 U.S. 106, 121 (1976).

In Switzerland, "lawyers must observe professional secrecy for all information that has been confided to them by their clients as a result of their professional activity."  *See* Swiss Federal Act on the Freedom of Movement of Lawyers ("Swiss Federal Lawyer's Act"), at Art. 13.  Moreover, the Swiss codes of civil and criminal procedure both expressly provide that a lawyer cannot be compelled to produce a privileged document.  Swiss Federal Code of Civil Procedure, Art. 160, lit. c; Swiss Federal Code of Criminal Procedure, Art. 264, §1, lit. d.  Lawyers who "divulge[s] a secret which was entrusted to them due to their profession, or which they have learnt within the execution of their profession" are subject to as much as three years imprisonment.  *See* Swiss Penal Code, Art. 321, §1, para. 1.  The Appellants submitted below an authoritative treatise explaining the scope of the Swiss attorney-client privilege, including, for example:

25

> Professional secrecy not only covers actual secrets but also everything that the attorney may find out, discover, know, guess and even deduce in the practice of his profession…
>
> …Whether the confidential facts have been communicated verbally or in writing or even indirectly by the handing over of exhibits or other items, they may not be divulged.  This is a rigorous duty which shall remain after the end of the contractual relationship of the attorney and his client, whether such relationship has ended due to the performance of the mandate, the termination thereof, the death of the principal or for other reasons.

(A-315.)[7]   Thus, Swiss privilege law covers the documents here, as the Jaitly Documents unquestionably comprise information that Hunton attorneys obtained in the practice of their profession — *i.e.*, the representation of their Swiss client, OIS.  Finally, application of Swiss privilege law is not "contrary to the public policy of this forum," *Astra Aktiebolag*, 208 F.R.D. at 98, given the firmly rooted policy that American attorneys should protect the confidences of their clients.

Because the Jaitly Documents are privileged under Swiss law, the District Court's Order allowing Berlamont to subpoena those documents should be vacated.  *See* 28 U.S.C. § 1782(a).

C.    A Protective Order Should Have Been Imposed.

The District Court's failure to provide its reasoning for denying the Appellants' motion for a protective order constitutes an abuse of discretion that

---

[7] The Court may consider these materials in determining Swiss law.  *See* Fed. R. Civ. P. 44.1 ("In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence.").

HUNTON & WILLIAMS LLP

warrants reversal.  Although the denial of a protective order is reviewed for abuse of discretion, *Dove v. Atlantic Capital Corp.*, 963 F.2d 15, 19 (2d Cir. 1992), the Court must explain the basis for its refusal.  *See Padgett v. Loventhal*, 706 F.3d 1205, 1209 (9th Cir. 2013) (vacating and remanding because "[w]hile the district court has discretion to depart from the rule [that prevailing parties are generally entitled to costs] in appropriate cases, we cannot review its unexplained order for abuse of discretion").  As the Seventh Circuit has explained, "[a]n abuse of discretion standard presupposes a reasoned exercise of discretion; lack of explanation is often sufficient in itself to constitute an abuse of discretion where the reasons for a decision left unexplained are not apparent from the record." *Production & Maint. Employees' Local 504, Laborers Int'l Union v. Roadmaster Corp.*, 954 F.2d 1397, 1405 (7th Cir. 1992).

The Order acknowledges that Appellants moved, in the alternative to vacating the *ex parte* order and quashing the subpoena, for a protective order preserving the confidentiality of the Jaitly Documents.  (SPA-1; A-203.) Notwithstanding this reference to the Appellants' motion, the Order fails to even mention the protective order again; instead, the final paragraph simply states that "OIS and H&W's motion is hereby denied in its entirety."  (SPA-5.)  This unexplained denial requires reversal.

Rather than remand to the District Court, this Court should exercise its

27

discretion and hold that the Appellants are entitled to a protective order. The record contains sufficient evidence for a finding of good cause necessary to support a protective order. While the precise content of the Jaitly Documents remains confidential, the record shows that Jaitly was OIS's "Senior Risk Officer" (A-11) and that the scope of his testimony approved by the English High Court necessarily involves OIS's practices, methodologies, and internal controls (A-226). This type of information is subject to confidential protection. *See Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 141, 144 (S.D.N.Y. 1997) (holding a bank's internal control documents, including internal audit procedures manual and credit policy manual were "within a broad spectrum of internal corporate documents that courts regularly hold to be confidential business information").

The showing of good cause is further bolstered by the fact that the Jaitly Documents were designated confidential pursuant to the Confidentiality Order entered in *Rembaum*, which designation was unchallenged by the *Rembaum* plaintiffs. (A-227 – A-239; A-258.) The Confidentiality Order expressly provides that it "shall survive the conclusion of this Action, and shall remain in effect after the conclusion of this Action unless subsequently modified by agreement between [the *Rembaum*] Plaintiffs and Defendants or further order of the Court." (A-236.) This Court has held that "absent a showing of improvidence in the grant of a Rule

26(c) protective order or some extraordinary circumstance or compelling need," parties "should be entitled to rely upon the enforceability of a protective order against any third parties." *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 296 (2d Cir. 1979). *See also Schiller v. City of New York*, 2007 WL 136149, *19 (S.D.N.Y. Jan. 19, 2007) (noting that, where a third party seeks documents protected by a confidentiality order, there is a "strong presumption against modification of a protective order").

The District Court concluded that the *Rembaum* Confidentiality Order itself does not bar disclosure of the Jaitly Documents based on a clause that allows the parties to disclose confidential materials if compelled to do so by court order. (SPA-4.) The Appellants do not challenge that finding here, but cite the *Rembaum* Confidentiality Order to demonstrate that the Jaitly Documents were properly designated as confidential, which supports their argument that any compelled disclosure of the Jaitly Documents to Berlamont should be governed by appropriate limits as well. Berlamont has indicated that he intends to provide the Jaitly Documents to a Swiss prosecutor to help him prepare for a possible future deposition of Mr. Jaitly. (A-12; A-263 – A-264.) As such, this Court should condition production of the Jaitly Documents on the entry of a suitable protective order that prohibits Berlamont from disclosing the documents to anyone other than his counsel. To the extent that Berlamont wishes to share the Jaitly Documents

with the Swiss prosecutor, the Court should condition his ability to do so on the Swiss prosecutor's agreement to sign the protective order.

The Order for Examination also supports a showing of good cause for limiting disclosure of the Jaitly Documents. Because the English Civil Procedure Rules bar disclosing the Jaitly examination transcript to Berlamont (*see* §II(A)(1) *supra*), any compelled disclosure should, at a minimum, be governed by an appropriate protective order.

Numerous courts have recognized the need to condition the grant of a Section 1782 application on the applicant's agreement to preserve the confidentiality of the requested materials. For example, in *Intel*, the Supreme Court advised the district court on remand to "also consider the significance of the protective order" entered in the prior U.S. court case where the requested documents had been produced. *Intel*, 542 U.S. at 266 n.19. *See also Four Pillars Enterprises Co., Ltd. v. Avery Dennison Corp.*, 308 F.3d 1075, 1080-81 (9th Cir. 2002) (affirming district court's denial of discovery under Section 1782 "on the ground that discovery would frustrate the protective order of the Ohio federal court"); *In re Bayer AG*, 146 F.3d 188, 196 (3d Cir. 1998) (remanding Section 1782 application to district court with instruction that it "consider the relevance of factors not before us, such as…appropriate measures, if needed, to protect the confidentiality of the materials" requested); *In re Application of Procter & Gamble*

30

*Co.*, 334 F. Supp. 2d 1112, 1117 (E.D. Wis. 2004) (suggesting several alternatives to address the respondent's concerns about confidentiality of discovery ordered pursuant to Section 1782, including the parties' entry into "an agreement on the confidentiality of discoverable documents" and the court's retention of jurisdiction "for the purpose of enforcing the confidentiality agreement").

CONCLUSION

The Court should reverse the District Court's Order on the merits and either quash the *ex parte* subpoena or condition disclosure of the Jaitly Documents on the entry of an appropriate protective order.

DATED: September 4, 2014

Respectfully Submitted,

HUNTON & WILLIAMS LLP

 /s/  Shawn Patrick Regan
SHAWN PATRICK REGAN
HUNTON & WILLIAMS LLP
200 Park Ave., 52nd Floor
New York, NY  10166
(212) 309-1000

- AND -

THOMAS R. JULIN
SAMUEL A. DANON
GUSTAVO J. MEMBIELA
PAULO R. LIMA
HUNTON & WILLIAMS LLP
1111 Brickell Ave., Ste. 2500
Miami, FL  33131
(305) 810-2500

*Attorneys for Movants-Appellants*

31

## **CERTIFICATE OF COMPLIANCE**

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,885 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office® Word 2010 in 14-point Times New Roman.

Dated:  September 4, 2014

_____/s/  Shawn Patrick Regan_____
Counsel for Movants-Appellants

32

# SPECIAL APPENDIX

## TABLE OF CONTENTS

PAGE

Memorandum Order denying Motion to Intervene, to Vacate *Ex Parte*
   Order, to Quash *Ex Parte* Subpoena and for Protective Order,
   dated August 4, 2014 (Dkt. #28) ................................ SPA-1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
In re Application of FRANCK          :       14-mc-00190 (JSR)
BERLAMONT for an Order Pursuant to   :
28 U.S.C. § 1782 to Conduct          :       MEMORANDUM ORDER
Discovery for Use in Foreign         :
Proceedings.                         :
------------------------------------x

JED S. RAKOFF, U.S.D.J.                      8/4/14

    Petitioner Franck Berlamont commenced the instant proceeding on

June 18, 2014, seeking to obtain pursuant to 28 U.S.C. § 1782

transcripts and exhibits (hereinafter referred to as the "Jaitly

documents") associated with an examination of one Rajiv Jaitly

conducted during discovery in a case formerly pending before this

Court, *Rembaum et al. v. Banco Santander, S.A., et al.*, 10-cv-4095

("*Rembaum*").[1] The stated purpose of the requested production of the

Jaitly documents was to aid in a Swiss criminal investigation of

Jaitly's former colleague in Optimal Investment Services ("OIS"),

Manuel Echevarria. The application was originally brought *ex parte*,

and on June 20, 2014, Judge Gardephe granted this application,

including a subpoena issued to OIS's counsel, Hunton and Williams

("H&W"). OIS and H&W now seek to have this Court vacate the Order

granting petitioner's § 1782 application and quash the subpoena, or

in the alternative, to have this Court issue a protective order to

---

[1] During discovery in *Rembaum*, the parties sought an examination of Jaitly, who
was residing in England at the time. The *Rembaum* Court issued Letters Rogatory to
the English High Court of Justice, Queen's Bench Division, requesting that
Jaitly's examination be ordered in London. Declaration of Shawn Patrick Regan,
dated June 30, 2014 ("Regan Decl."), Exhibit ("Ex.") A. The English High Court
granted the application and ordered the examination of Jaitly. Regan Decl., Ex B.

maintain the confidentiality of the documents that petitioner requests.

In the interests of international comity, 28 U.S.C. § 1782 permits federal courts to grant discovery within the United States for use in foreign proceedings. *See, e.g.*, *Lancaster Factoring Co. Ltd. v. Mangone*, 90 F.3d 38, 41 (2d Cir. 1996) (stating that the goal of § 1782 is to "provide 'equitable and efficacious' discovery procedures in the United States courts 'for the benefit of tribunals and litigants involved in [international] litigation'"). OIS and H&W allege that the § 1782 Subpoena should be quashed because, allegedly, (1) Berlamont has failed to show that the requested documents are for "use in a foreign proceeding" as required by § 1782; (2) the *Intel* factors counsel against granting § 1782 aid, *see Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004); (3) the *Rembaum* proceedings do not permit disclosure of the Jaitly documents; (4) Swiss attorney-client privilege prohibits disclosure of the Jaitly documents; and (5) the Hague Convention and principles of comity prohibit disclosure of the requested documents. The Court, for the reasons following, denies the motion in its entirety.

First, OIS and H&W's argument that Berlamont somehow fails to satisfy the "for use in a foreign proceeding" prong of § 1782 because Berlamont is not attempting to admit the Jaitly documents into evidence in a foreign Court, is without merit. A complaining witness's presentation of evidence to an investigating magistrate

2

satisfies the "for use" prong of § 1782. *Intel*, 542 U.S. at 257-58.
Here, the Swiss prosecutor, Marc Tappolet, has explicitly stated
that "[t]he official report and explanations in the United States by
Mr. Rajiv Jaitly . . . is of great usefulness for my inquiry."
Declaration of O. Andrew F. Wilson dated July 15, 2014 ("Wilson
Supp. Decl."), Ex. A at 1. Thus the Court finds that the Jaitly
documents are for "use in a foreign proceeding" as required by §
1782.

    *Second*, the *Intel* factors weigh in favor of granting aid in
this instance. Those factors are: (1) whether the person from whom
discovery is sought is a participant in the foreign proceeding (in
which case the discovery can be sought through other means); (2) the
nature of the foreign tribunal and the receptivity of the foreign
court to federal court assistance; and 3) whether the application is
unduly intrusive or burdensome. *Intel*, 542 U.S. at 264-65. Here, 1)
OIS and H&W are not parties to the Swiss proceeding; 2) the Swiss
prosecutor has explicitly stated that the Jaitly documents are "of
great usefulness" for the foreign proceeding, Wilson Supp. Decl.,
Ex. A at 1; and 3) the petitioner is seeking a specific, discrete
set of documents that are easily identifiable and not unduly
burdensome.

    *Third*, the *Rembaum* proceedings do not prevent the Court from
granting Berlamont's application. To begin with, the *Rembaum*
Confidentiality Order does not prevent the Court from granting
Berlamont's application. While the parties dispute whether the

Confidentiality Order applies to the Jaitly documents, it is undisputed that the Confidentiality Order in *Rembaum* explicitly states that "[n]othing contained herein shall prevent disclosure to persons who are not Qualified Persons under the terms of this Confidentiality Stipulation and Order if . . . the Court, after notice to all affected persons, allows such disclosure." Declaration of Shawn Patrick Regan, dated June 30, 2014 ("Regan Decl."), Ex. C at 8. This is the situation here.

Additionally, the Letters Rogatory in *Rembaum* do not prevent the Court from granting Berlamont's application. OIS and H&W argue that English law of confidentiality applies to this case because the Letter Rogatory states "[t]he District Court additionally requests that the confidentiality of any evidence produced be maintained pursuant to the laws of England." Regan Decl., Ex. A. at 10. However, the Order that governed the Jaitly examination in England was not the Letters Rogatory, which are nothing but a request for judicial assistance, but rather the English High Court's Order, Regan Decl., Ex. B, which contains no reference to the language in the Letters Rogatory on which OIS and H&W rely.

Fourth, Swiss attorney-client privilege does not prohibit disclosure. In fact, Swiss privilege law does not even apply here because the Jaitly documents, in the language of relevant authority, fail to "touch base" with Switzerland. *See, e.g., Anwar v. Fairfield Greenwich Ltd.*, 982 F. Supp. 2d 260, 264 (S.D.N.Y 2013). Instead, the Jaitly documents are located in New York, were created and

4

produced in the context of a case pending in New York, and are being sought from United States lawyers in a court in New York pursuant to a United States statute.

Fifth, neither the Hague Convention nor principles of comity prohibit disclosure. OIS and H&W argue that granting the application contravenes Article 1 of the Hague Convention, which prohibits using Letters Rogatory "to obtain evidence which is not intended for use in judicial proceedings, commenced or contemplated." Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, art. 1 July 27, 1970, U.S.T. 2555, 847 U.N.T.S. 231. But Berlamont's application does not run afoul of this treaty language because Article 1 does not impose any restrictions on the subsequent use of evidence obtained pursuant to properly issued Letters Rogatory. OIS and H&W's appeal to principles of comity is also misplaced, as the English High Court's Order includes no express condition that Jaitly's examination only be used in Rembaum.

For the foregoing reasons, OIS and H&W's motion is hereby denied in its entirety. The Clerk of the Court is directed to close docket numbers 1, 7, and 10 on the docket of this case.

SO ORDERED.

Dated:   New York, NY
August 1, 2014

JED S. RAKOFF, U.S.D.J.

5